**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED



OCT 12 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WESTERN ALLIANCE BANK, | No.   16-15077 |
| Plaintiff-counter-defendant-Appellee, | D.C. No. 2:14-cv-00761-JWS |
| v. | |
| RICHARD A. JEFFERSON, | MEMORANDUM[*] |
| Defendant-counter-claim-3rd-party-plaintiff-Appellant, | |
| v. | |
| THEODORE KRITZA, a married man and MICHELLE KRITZA, a married woman, | |
| Third-party-defendants. | |

Appeal from the United States District Court
for the District of Arizona
John W. Sedwick, District Judge, Presiding

Argued and Submitted September 12, 2017
San Francisco, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  WALLACE, TASHIMA, and WATFORD, Circuit Judges.

**1.**  The district court properly granted summary judgment in favor of Western Alliance Bank on its breach of contract claim against Richard Jefferson. In the forbearance agreement, Jefferson agreed to accept liability for the outstanding balance on the line of credit, notwithstanding his contention that the documents comprising the line of credit had been forged.  In return, the Bank agreed that it would not pursue immediate legal action against Jefferson, notwithstanding its contention that Jefferson was liable under the line of credit and already in default.  The Bank agreed to forgo pursuing its legal remedies under the line of credit until January 15, 2014.

The forbearance agreement thus represented a pre-litigation settlement of the parties' impending legal dispute over whether Jefferson was liable notwithstanding the alleged forgery.  Jefferson gave up the right to contest his liability for the outstanding balance in return for independent consideration from the Bank.  There is no dispute that the Bank performed its end of the bargain (by not suing Jefferson before January 15, 2014), and it is undisputed that Jefferson breached the agreement by not paying the outstanding balance by January 15, 2014. Accordingly, the Bank was entitled to summary judgment on its breach of contract claim.  Our disposition renders it unnecessary to decide whether Jefferson's

entering into the forbearance agreement had the effect of ratifying the forgery, whether Arizona law permits ratification in these circumstances, and whether the Bank was judicially estopped from arguing ratification.

Jefferson contends that the Bank induced him into signing the forbearance agreement through misrepresentation and concealment, because the Bank led him to believe that there was one continuous line of credit when in fact there were several different lines of credit. The undisputed facts show that the Bank provided Jefferson and his legal team with all relevant documents relating to the line or lines of credit, and that Jefferson had the advice of counsel before he decided to enter into the forbearance agreement. Jefferson may now regret signing the agreement, but he was not defrauded into doing so.

**2.** The district court did not abuse its discretion in denying Jefferson's request to modify the scheduling order so that he could amend his answer and counterclaims. To obtain such relief under Federal Rule of Civil Procedure 16, Jefferson was required to show good cause and diligence, but he failed to do so. *See Santillan v. USA Waste of Cal., Inc.*, 853 F.3d 1035, 1048 (9th Cir. 2017). As the district court found, Jefferson knew at the time the scheduling order was entered that the deadline for amendments would pass before the period for conducting discovery closed. Thus, if Jefferson anticipated using information

produced during discovery as the basis for amending his pleadings, he should have objected then. Instead, Jefferson waited eight months to seek leave to amend. Even then, he did not make a persuasive showing that the proposed amendments were based on information that he obtained only after the original deadline for amendments had passed.

**3.** The district court properly dismissed Jefferson's counterclaims. As held above, when Jefferson entered into the forbearance agreement, he gave up the right to contest his liability for the outstanding balance owed under the line of credit, notwithstanding his contention that he owed nothing in light of the alleged forgery that occurred. Jefferson's counterclaims simply sought to relitigate that dispute by alleging that the Bank was negligent in failing to catch the alleged forgery. The bargain Jefferson struck under the forbearance agreement precluded him from pursuing his counterclaims.

**AFFIRMED.**

Jefferson's Request for Judicial Notice (Docket Entry 42) is **DENIED**.